## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AYASHA WEATHERLY,<br>405 N. Street NW, Apt. 204<br>Washington, DC 20001<br><br>       Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC<br><br> Serve:  Corporation Service Company<br>     1090 Vermont Ave. NW<br>     Washington, DC 20005<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.<br><br> Serve: C T Corporation System<br>    1015 15th St. NW<br>    Washington, DC 20005<br><br>and<br><br>TRANS UNION, LLC,<br><br> Serve:  Corporation Service Company<br>     100 Shockoe Slip, Fl 2<br>     Richmond, VA 23219-4100<br><br>       Defendants. | Civil Action No. 1:25-cv-584 |

## COMPLAINT

Plaintiff Ayasha Weatherly, by counsel, files this Complaint against Defendants Equifax Information Services, LLC, Experian Information Solutions, Inc., and Trans Union, LLC. In support of her claims, Ms. Weatherly alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for statutory, actual, and punitive damages; costs; and attorneys' fees brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x.

2. Ms. Weatherly is the victim of identity theft, which "has emerged" as "one of the fastest growing white-collar crimes in the United States." *Sloane v. Equifax Info. Services, LLC*, 510 F.3d 495, 505 (4th Cir. 2007). Surveys have shown that "between 1998 and 2003, approximately 27.3 million adults discovered they were the victims of identity theft, with 9.91 million adults discovering they were victims in 2003 alone." *Id.*

3. The FCRA "provides the primary recourse for victims of identity theft." Christopher P. Couch, *Forcing the Choice Between Commerce & Consumers: Application of the FCRA to Identity Theft*, 53 Ala. L. Rev. 583, 587 (2002).

4. The FCRA requires consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681.

5. To achieve this purpose, the FCRA sets out requirements and obligations that consumer reporting agencies must follow when consumers dispute the accuracy of the information reported in their credit reports. *Id.* Thus, the FCRA holds the credit reporting agencies responsible for taking reasonable steps to correct a consumer's credit report after he or she brings the theft to the agency's attention. *See Sloane*, 510 F.3d at 506–07 ("Of course, Equifax bore no responsibility for the initial theft, but the FCRA makes the company responsible for taking reasonable steps to correct Suzanne's credit report once she brought the theft to the company's attention; this Equifax utterly failed to do.").

6. Ms. Weatherly's identity was stolen and multiple credit accounts were opened in her name without her knowledge, consent, or permission.

7. Ms. Weatherly did not authorize these accounts to be opened on her behalf, and she did not benefit from them.

8. After the unauthorized were opened, many of them fell into a delinquent status, and some of them were sent to collections.

9. Ms. Weatherly checked her credit reports and learned that Equifax, Experian, and Trans Union were each reporting several fraudulent accounts on her reports.

10. When Ms. Weatherly disputed the fraudulent accounts with Equifax, Experian, and Trans Union, the credit reporting agencies each failed to adequately investigate her dispute or remove the fraudulent accounts from her credit reports.

11. Ms. Weatherly also requested her credit report from Equifax several times, but Equifax refused to provide her with a copy of her credit report in response to her request.

12. As a result, Ms. Weatherly alleges claims against Equifax, Experian, and Trans Union for: (1) violating the FCRA, §1681e(b), by failing to reasonably ensure the maximum possible accuracy of her credit reports; and (2) violating the FCRA, §1681i, by failing to fully investigate her disputes. She also alleges claims against Equifax for violating the FCRA§1681g, by failing to provide her with a copy of her file upon her request.

## JURISDICTION AND VENUE

13. This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 168lp.

14. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Ms. Weatherly's claims occurred in this District, where she resides.

## PARTIES

15. Ms. Weatherly is a natural person residing in this District and Division and a consumer as defined by 15 U.S.C. § 1681a(c) and 15 U.S.C. § 1692a(3).

16. Equifax is a foreign limited liability company. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

17. Experian is a foreign corporation. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

18. Trans Union is a foreign limited liability company. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

## FACTS

19. Ms. Weatherly learned that she was the victim of identity theft and that several accounts had been opened in her name with her knowledge or permission.

20. She later checked her credit reports and discovered that Equifax, Experian, and Trans Union were reporting the fraudulent accounts.

21. Between her three credit reports, there were approximately eleven accounts, including several collection accounts, that she did not recognize.

22. Ms. Weatherly did not open these accounts. She never authorized these accounts to be opened in her name, nor did she receive any benefits from these accounts.

23. Ms. Weatherly disputed the inaccurate information in her credit reports with Equifax, Experian, and Trans Union in March 2023.

24. She explained that someone, possibly her mother, had opened the fraudulent accounts without her permission, and noted that all of the accounts had been opened before her mother's death in 2019. She enclosed a copy of a FTC Identity Theft Affidavit, and signed her dispute letter in front of a notary public. She asked Equifax, Experian, and Trans Union to remove the fraudulent accounts from her reports.

25. Upon information and belief, Equifax, Experian, and Trans Union each forwarded notice of Ms. Weatherly's dispute to the furnishers of the fraudulent accounts.

26. And when Equifax, Experian, and Trans Union received the furnishers' responses to Ms. Weatherly's disputes, they relied entirely on the furnishers' investigations. The credit reporting agencies did not conduct any other investigation into Ms. Weatherly's dispute.

27. So, while some of the fraudulent information was deleted from Ms. Weatherly's report, many of the accounts were verified and remained on her credit reports.

28. Ms. Weatherly disputed these fraudulent accounts again in January 2025.

29. Each of Ms. Weatherly's letters again disputed the fraudulent accounts. Ms. Weatherly's second dispute letters enclosed a copy of her FTC fraud affidavit and information sufficient to verify her identity.

30. Upon information and belief, the credit reporting agencies each forwarded notice of Ms. Weatherly's second disputes to the furnishers of the fraudulent account information.

31. Again, the credit reporting agencies each relied entirely on the furnishers' investigations. As before, the credit reporting agencies did not conduct any other investigation into Ms. Weatherly's disputes.

32. Trans Union responded to Ms. Weatherly's dispute on February 11, 2025. However, Trans Union only deleted one of the fraudulent account and did not address any of the other accounts that Ms. Weatherly disputed.

33. As of the date of this filing, neither Equifax nor Experian has provided a substantive response to Ms. Weatherly's disputes.

34. In addition, Ms. Weatherly has requested her Equifax credit report several times over the past two years, but Equifax has refused to provide her with a copy of her report in response to these requests.

35. As a result of Defendants' conduct, Ms. Weatherly has suffered significant actual damages, including a decreased credit score, the inability to obtain credit, embarrassment, humiliation, and emotional distress.

### *Defendants' FCRA Violations Were Willful*

36. As a standard practice, the credit reporting agencies do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite several court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

37. Upon information and belief and consistent with their standard policies and procedures, the credit reporting agencies automatically generated their "investigation" results here once the furnishers verified the statuses of the accounts, and they did not take any extra actions to verify the accuracy of the information that the furnishers provided.

38. Instead, the credit reporting agencies blindly accepted the furnishers' versions of the facts and continued to report the inaccurate, derogatory information on Ms. Weatherly's credit reports.

39. The credit reporting agencies continue the practice of parroting their furnishers' responses despite several lawsuits alleging (and establishing) that they fail to conduct reasonable investigations under the FCRA.

40. The credit reporting agencies do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

41. As a result, at all times relevant to this Complaint, Equifax's, Experian's, and Trans Union's conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. By example only and without limitation, its conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known, by failing to properly investigate consumers or implement any procedure to identify and correct these common errors before furnishing reports.

**COUNT ONE:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)**
**(EQUIFAX, EXPERIAN, and TRANS UNION)**

42. Ms. Weatherly incorporates the preceding allegations.

43. Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Ms. Weatherly's credit reports and credit files that they published and maintained.

44. Because of Equifax's, Experian's, and Trans Union's conduct, Ms. Weatherly suffered actual damages, including, without limitation, a decreased credit score, the inability to obtain credit, embarrassment, humiliation, and emotional distress.

45. Equifax's, Experian's, and Trans Union's conduct in violating § 1681e(b) was willful, rendering them liable to Ms. Weatherly for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

46. In the alternative, Equifax, Experian, and Trans Union were negligent, entitling Ms. Weatherly to a recovery under 15 U.S.C. § 1681o.

**COUNT TWO:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681i**
**(EQUIFAX, EXPERIAN, and TRANS UNION)**

47. Ms. Weatherly incorporates the preceding allegations.

48. Equifax, Experian, and Trans Union violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide the furnishers with all the relevant information about Ms. Weatherly's disputes in violation of § 1681i(a)(2); (3) failing to review and consider all relevant information submitted by Ms. Weatherly in violation of §1681i(a)(4); (4) failing to promptly delete the disputed inaccurate items of information from Ms. Weatherly's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A).

49. Because of Equifax's, Experian's, and Trans Union's violations of §1681i, Ms. Weatherly suffered actual damages, including, but not limited to, a decreased credit score, the inability to obtain credit, embarrassment, humiliation, and emotional distress.

50. Equifax's, Experian's, and Trans Union's violations of § 1681i were willful, rendering it liable to Ms. Weatherly for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

51. In the alternative, Equifax, Experian, and Trans Union were negligent, entitling Ms. Weatherly to a recovery under 15 U.S.C. § 1681o.

**COUNT TWO:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681g(a)**
**(EQUIFAX)**

52. Ms. Weatherly incorporates the preceding allegations.

8

53. Equifax's refusal to provide Ms. Weatherly with a copy of her credit report in response to her request for it violated § 1681g(a).

54. Because of Equifax's Ms. Weatherly suffered actual damages, including, but not limited to, informational injury and emotional distress.

55. Equifax's violations of § 1681g were willful, rendering it liable to Ms. Weatherly for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

56. In the alternative, Equifax was negligent, entitling Ms. Weatherly to a recovery under 15 U.S.C. § 1681o.

WHEREFORE, Ms. Weatherly demands judgment for actual, statutory, and punitive damages against Defendants as pleaded above; her attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and any other relief the Court finds appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,
**AYASHA WEATHERLY**

By: ___/s/ Kristi C. Kelly___
Kristi C. Kelly, DC No. 974872
Casey S. Nash, DC No. 1028868
KELLY GUZZO, PLC
3925 Chain Bridge, Suite 202
Fairfax, VA  22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: casey@kellyguzzo.com
*Counsel for Plaintiff*